UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ENRIQUE FAJARDO, : | |
| Petitioner, : | |
| : | |
| v. : | Case No. 3:14cv466(MPS) |
| : | |
| E. MALDONADO, ET AL., : | |
| Respondents. : | |

**RULING ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Enrique Fajardo, an inmate currently confined at Osborn Correctional Institution in Suffield, Connecticut, brings this action *pro se* for an amended writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his 2011 convictions for risk of injury to a child. For the reasons that follow, the amended petition will be denied.

**I. Standard of Review**

A federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotation marks omitted). A federal court may not grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This is a "difficult" standard to "meet." *Metrish v. Lancaster*, ___ U.S. ___, 133 S. Ct. 1781, 1786 (2013).

Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. *See Howes v. Fields*, ___ U.S. ___, 132 S. Ct. 1181, 1187 (2012); *Carey v. Musladin*, 549 U.S. 70, 74 (2006). Thus, "[c]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Parker v. Matthews*, ___ U.S. ___, 132 S. Ct. 2148, 2155 (2012) (quoting 28 U.S.C. § 2254(d)(1)). The law may be a generalized standard or a bright-line rule intended to apply the standard in a particular context. *See Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle. *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008). It is not enough that the state court decision is incorrect or erroneous. Rather, the state court's application of clearly established law must be unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Thus, a state prisoner must show that the challenged court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded

disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits is "difficult to meet and highly deferential," and demands that "state court decisions be given the benefit of the doubt") (internal citation omitted). In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Id.*

## II. Procedural History

On August 11, 2010, police officers arrested the petitioner on charges of sexual assault and risk of injury to a minor. *See State v. Enrique F.*, 146 Conn. App. 820, 823, 79 A.3d 140, 143 (2013); Resp'ts' Mem. Opp'n Am. Pet. Writ Habeas Corpus, App. B, Doc. No. 12-2 at 4. On September 27, 2011, in the Connecticut Superior Court for the Judicial District of Danbury, the State's Attorney filed a substitute long form information charging the petitioner with one count of sexual assault in the second degree in violation of Connecticut General Statutes § 53a-71(a)(1), one count of risk of injury to a minor in violation of Connecticut General Statutes § 53-21(a)(1), and one count of risk of injury to a minor in violation of Connecticut General Statutes § 53-21(a)(2). *See* Resp'ts' Mem. Opp'n, App. B at 6, 30. Trial commenced on October 12, 2011. *See id.* at 7. On October 14, 2011, the judge granted the State's Attorney's motion to amend the long form information to conform to the victim's testimony regarding the dates of the petitioner's conduct. *See id.* at 7, 17, 31-32. On October 20, 2011, a jury found the petitioner not guilty of the sexual assault charge, but guilty of the two risk of injury charges. *See id.* at 8,

35.  On December 11, 2011, a judge imposed a total effective sentence of eighteen years of imprisonment, execution suspended after ten years, followed by twenty years of probation.  *See id.* at 8, Amended Pet. Writ Habeas Corpus at 2.

The petitioner appealed his convictions on two grounds.  *See Enrique F.*, 146 Conn. App. at 821, 79 A.3d 142-43.  He claimed that the trial judge "erred in granting the [prosecutor's] motion to amend the long form information to conform to the testimony of the victim" and that improper conduct of the prosecutor deprived him of a fair trial.  *See id.*  On December 3, 2013, the Connecticut Appellate Court affirmed the judgment of conviction.  *See id.* at 833, 79 A.3d at 149.  On January 8, 2014, the Connecticut Supreme Court denied the petition for certification to appeal the decision of the Connecticut Appellate Court.  *See State v. Enrique F.*, 311 Conn. 903, 83 A.3d 350 (2014).

On April 9, 2014, the petitioner filed the present federal petition.  On August 25, 2014, the petitioner filed an amended petition.  The respondent has filed a memorandum in opposition to the amended petition.

### III.  Factual Background

The Connecticut Appellate Court determined that the jury could have found the following facts:

> In 2008, the victim, S, moved into a new house with her mother, E, and the [petitioner]. S testified that the [petitioner] began to engage in inappropriate conduct with her shortly after they moved into the new home in 2008. She testified that multiple times each week the [petitioner] would touch her breasts, buttocks, and vagina, both over and under her clothing. The [petitioner] instructed S not to report this conduct because it would break up the family.
>
> S specifically testified that the [petitioner] "touched" her from the summer of 2009 throughout her seventh grade school year, and during the summer of 2010.

4

> She stated that any abuse would take place while E was at church, which was several times per week. On Sundays, E would leave early in the morning to go to church, and on Wednesdays she would be there until nine at night. At these times, the [petitioner] was the only adult at home with S.
>
> S also described the [petitioner's] general behavior in the house. S testified that the [petitioner] would walk into her room unannounced when she was getting dressed after a shower. The [petitioner] "would just come in the room, without knocking, and open the door and just stare at me . . . then, after, like, a few moments, he would leave." The [petitioner] would also randomly "slap" S on her buttocks. The [petitioner] characterized the slapping as "a game" the family played, but S testified that the slapping made her uncomfortable and that she told the [petitioner] to stop. O, S's grandmother, witnessed the [petitioner] slapping S's buttocks and entering her room unannounced. Although this behavior was common in the household generally, S testified that it specifically occurred during January through May, 2010, while she was in the seventh grade. S began to complain that she wanted to live with O.
>
> Upon O's request, the family's pastor met with O, E, the [petitioner], and S on August 10, 2010, to discuss why S wanted to move out of her house. At the meeting, S alleged that the [petitioner] was sexually assaulting her. O immediately contacted the police, despite the fact that the [petitioner] denied the allegations and pleaded with the family not to call the authorities. The police responded, learned that S had accused the [petitioner] of sexual assault, and the Department of Children and Families (department) directed the responding officers to send S home with O. The [petitioner] was arrested on August 11, 2010, and S remained in the custody of O.

*Enrique F.,* 146 Conn. App. at 821-23, 79 A.3d at 142-43.

### IV. Discussion

The petitioner raises a single ground for relief in the amended petition: He contends the prosecutor deprived him of a fair trial when she engaged in prosecutorial misconduct by eliciting testimony regarding the victim's contemplation of suicide and by referring to that testimony during closing argument, in spite of rulings by the trial court barring references to the victim's suicidal ideation.

5

Generally, "it is not enough that [a prosecutor's] remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotation marks omitted). Instead, "the relevant question is whether the [prosecutor's] comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (citation and internal quotation marks omitted). In evaluating a claim of prosecutorial misconduct, the court considers the prosecutor's remarks in the context of the entire trial "to determine whether the prosecutor's behavior" amounted to prejudicial error, i.e., it considers "the probable effect [of the prosecutor's remarks] on jury's ability "to judge the evidence fairly." *United States v. Young*, 470 U.S. 1, 12 (1985). The court considers circumstances such as whether the alleged misconduct was invited by the defense, whether the trial court gave any curative jury instructions, and the strength of the State's case against the defendant. *Darden,* 477 U.S. at 181-82.

Although the court could find no Supreme Court decisions specifically addressing a prosecutor's alleged violation of a state trial court's evidentiary rulings, nothing in *Darden* suggests that the "so-infected-the-trial-with-unfairness" standard is limited to prosecutorial misconduct occurring during closing argument. Indeed, the Supreme Court has described the standard set forth in *Darden* as a "highly generalized standard for evaluating claims of prosecutorial misconduct." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012). Furthermore, a claim that a prosecutor has introduced evidence in violation of a state trial court's evidentiary ruling ultimately presents a state-law evidentiary issue, and would warrant federal habeas relief only if the petitioner can establish that the state court's evidentiary error "denied him a fundamentally fair trial," a standard that echoes *Darden*. *Sims v. Ercole*, No. 09 CIV. 4398, 2010

6

WL 1685434, at *6 (S.D.N.Y. Apr. 23, 2010). *Cf. Dowling v. United States*, 493 U.S. 342, 352 (1990) (in deciding whether introduction of prejudicial evidence violates Due Process Clause, "[t]he question . . . is whether it is acceptable to deal with the potential for abuse through nonconstitutional sources like the Federal Rules of Evidence, or whether the introduction of this type of evidence is so extremely unfair that its admission violates fundamental conceptions of justice.") (citations, quotation marks, and footnote omitted).[1]

In its review of this claim, the Appellate Court applied Connecticut cases with holdings that mirror the applicable federal law. *See Enrique F.*, 146 Conn. App. at 830; 79 A.3d at 147. Because the Connecticut Appellate Court applied the correct legal principles, the decision is not contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (state court need not be aware of nor cite relevant Supreme Court cases as long as the reasoning and decision do not contradict applicable law). Thus, the court considers whether the analysis of the Connecticut Appellate Court was an unreasonable application of federal law.

The Connecticut Appellate Court acknowledged that its review of the prosecutorial misconduct claims required a two-step process: "(1) whether impropriety occurred in the first instance; and (2) whether that impropriety deprived a defendant of his due process right to a fair trial." *Enrique F.*, 146 Conn. App. at 830; 79 A.3d at 147. First, the court considered each of the four references to suicidal ideation made during the trial in response to the petitioner's argument that "the state intentionally inserted repeated references to suicide into the trial with the purpose of inflaming the passions of the jury." *Id.* at 828.

---

[1] The present case is not one in which the prosecutor is alleged to have asked a question that adversely commented on the defendant's right to remain silent or otherwise infringed on an

Reviewing the trial transcript, the Connecticut Appellate Court observed that the initial mention of suicide was made by the victim herself during her direct examination, after the prosecutor asked her why she went to the hospital. *See id.*; 79 A.3d at 146; Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-7, Trial Tr., 128, Oct. 12, 2011. Counsel for the petitioner did not object to this testimony.

The second reference—and the first challenged by the petitioner in the Appellate Court—occurred during direct examination of a social worker from the Department of Children and Families ("DCF") who had visited the victim in her grandmother's home on November 29, 2010. After the social worker testified that she had engaged in crisis intervention, she was asked by the prosecutor "what is crisis intervention?" In response, she testified that crisis intervention occurs when a child is "making suicidal ideations." *See Enrique F.*, 146 Conn. App. at 831; Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-9, Trial Tr., 38-42, Oct. 14, 2011. Counsel for the petitioner objected to the testimony, and the judge sustained the objection and struck the statement from the record at the request of counsel for the petitioner. *See Enrique F.*, 146 Conn. App. at 831; Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-9, Trial Tr., 41.

The third reference—also challenged by the petitioner—occurred during the direct examination of the psychiatrist who treated the victim on December 1, 2010, in the in-patient unit at Danbury Hospital. *See Enrique F.*, 146 Conn. App. at 828; 79 A.3d at 146-47; Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-11, Trial Tr., 7-24, Oct. 18, 2011. Before the testimony of the psychiatrist counsel for the petitioner asked that the prosecutor make an offer of proof regarding whether the psychiatrist would testify about suicidal ideation on the part of the victim. *See*

---

independent constitutional guarantee. *Compare Greer v. Miller*, 483 U.S. 756 (1987).

*Enrique F.*, 146 Conn. App. at 829; 79 A.3d at 147; Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-11, Trial Tr., 4.  The trial judge agreed to the request, the prosecutor made an offer of proof, and the judge ruled that the psychiatrist could testify to the fact that the victim was admitted for psychiatric treatment and that her treatment was related to a psychiatric issue.  *See Enrique F.*, 146 Conn. App. at 829; Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-11, Trial Tr., 4-19.  The trial judge concluded that testimony by the psychiatrist regarding suicidal thoughts on the part of the victim was not "all that relevant" and ruled that the psychiatrist should not testify about treatment for the victim's thoughts of suicide.  *See Enrique F.*, 146 Conn. App. at 829.

Despite this ruling by the judge, the psychiatrist did make a reference to suicidal ideation during her testimony. Specifically, during the prosecutor's direct examination of the psychiatrist, the psychiatrist testified that the victim was "admitted to the inpatient unit." The prosecutor then asked, "[a]nd what was she admitted for?" The psychiatrist responded: "She was admitted for suicidal ideation." Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-11, Trial Tr., 21; *Enrique F.*, 146 Conn. App. at 829. The petitioner's attorney objected to the testimony, and the prosecutor agreed that the testimony should be stricken.  *See id.*; Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-11, Trial Tr., 22.  The court sustained the objection, struck the testimony, and informed the jury that the testimony was not relevant to its deliberations and that they should ignore it.  *See id.*  At the conclusion of the State's case, counsel for the petitioner moved for a mistrial on the ground that the statements by the two witnesses about the victim's suicidal ideation had tainted the jury and violated his right to a fair trial.  *See* Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-11, Trial Tr., 26-29.  The judge denied the motion.  *Enrique F.*, 146 Conn. App. at 829; Trial Tr., 29.

9

The fourth reference occurred during the prosecutor's closing argument, in which she referred to the victim's testimony regarding her desire to kill herself because she was "damaged goods." *See Enrique F.*, 146 Conn. App. at 829; 79 A.3d at 147; Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-12, Trial Tr., 70, Oct. 19, 2011. Counsel for the petitioner objected to the statement and the judge sustained the objection. *See id.* At the conclusion of closing arguments, counsel for the petitioner again moved for a mistrial regarding the statement by the prosecutor and testimony of witnesses regarding suicide and the trial judge denied the motion. *See id.* at 829-30; 79 A.3d at 147; Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-12, Trial Tr., 98-105.

The Connecticut Appellate Court determined that there was no evidence that the prosecutor had intentionally violated any ruling of the court with regard to the admissibility of references to suicidal ideation. *See Enrique F.*, 146 Conn. App. at 831; 79 A.3d at 148. The prosecutor did not invite the DCF social worker to use the words "suicidal ideation," and there was no court order prohibiting the prosecutor from posing the question "what is crisis intervention?" After the court sustained the objection made by counsel for the petitioner and struck the statement from the record, the prosecutor did not pursue the issue of suicide. Thus, the Appellate Court concluded, the prosecutor had not engaged in improper conduct. *See id.*

With respect to the second alleged instance of impropriety—the reference to suicidal ideation by the psychiatrist following the offer of proof—the Appellate Court concluded that "the prosecutor did not act deliberately in contravention of the [trial] court's ruling." *Id.* at 832. The Appellate Court noted and the record reflects that in response to the statement of the psychiatrist regarding suicidal ideation, the prosecutor immediately agreed that the statement should be stricken. *See* Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-11, Trial Tr., 21-22. The

10

Connecticut Appellate Court noted that the prosecutor's immediate request to strike the statement as well as her genuine surprise regarding the answer provided by the psychiatrist in response to her question did not support an inference that the prosecutor intentionally invited the statement in contravention of the court's prior ruling regarding its admissibility. *See Enrique F.*, 146 Conn. App. at 831; 79 A.3d at 148. Thus, the Appellate Court concluded that the statement made by the psychiatrist was not the result of any improper conduct by the prosecutor. *See id.* at 832; 79 A.3d at 148. Furthermore, the trial judge struck the testimony and gave the jury a curative instruction directing it not to consider in any way the testimony of the psychiatrist regarding suicidal ideation of the victim. *See* Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-11, Trial Tr., 21–22. In the charge to the jury, the judge reiterated the instruction that statements that had been stricken should not be considered as evidence during deliberations. *See* Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-12, Trial Tr., 111-12.

The Appellate Court's determination that the prosecutor had not engaged in misconduct during the direct examinations of the DCF social worker and the psychiatrist was not an unreasonable application of Supreme Court law—assuming it was an application of federal law at all (as opposed to state law). *See Sims*, 2010 WL 1685434, at *4–*6. The Appellate Court's determinations that the prosecutor did not engage in misconduct by deliberately eliciting evidence previously ruled inadmissible are reasonable and supported by the record. Further, although the Appellate Court did not reach this issue because it concluded that there was no misconduct, there is nothing in the record to suggest that eliciting testimony regarding suicidal ideation from these two witnesses denied the petitioner a fair trial. First, evidence of the victim's suicidal ideation had already been admitted—without objection from the petitioner—during the

11

victim's testimony. Even the petitioner makes no claim that the eliciting of the victim's reference to suicidal ideation amounted to prosecutorial misconduct. Second, there was other evidence, which the trial judge expressly allowed and about which the petitioner does not complain, that the victim was treated for a psychiatric condition after the alleged abuse. Third, the trial judge took measures to ensure that the references to suicidal ideation by the DCF social worker and the psychiatrist did not prejudice the petitioner. The trial judge sustained the petitioner's objection to the testimony of the DCF social worker and ordered it stricken. The judge also sustained the objection to the psychiatrist's testimony, struck it from the record, and instructed the jury to ignore it. During the charge to the jury, the judge instructed the jury that evidence that had been stricken should not be considered in any way during deliberations. *See* Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-12, Trial Tr., 111-12. In addition, the judge informed the jury that arguments and statements of counsel during the trial and during closing arguments were not evidence. *See id.* at 112.

Further, the trial record suggests that the case against the petitioner boiled down to a test of the victim's credibility—and the petitioner does not suggest otherwise. The victim testified at length that the petitioner had abused her over several months. Her testimony was explicit and the jury apparently believed her. The petitioner does not explain how a few more references to suicidal ideation—other than the one made by the victim in her unchallenged testimony—made it more likely the jury would convict than it already was. The closing arguments of counsel focused on whether the victim's testimony was consistent with earlier statements she had made about the alleged abuse. There was little discussion of the psychological effects of the alleged abuse other than, as noted, a single, brief reference to suicidal ideation. There is no basis to infer

12

from this record that the references to suicidal ideation deprived the petitioner of a fair trial. Finally, as the trial judge noted in denying the petitioner's motion for a mistrial, the jury was expressly allowed to hear evidence that the victim was being treated for a psychiatric condition after the petitioner's conduct started. (ECF No. 12-12 at 105–06.) The petitioner offers no reason to believe that the marginal effect of adding "suicidal ideation" to the expressly allowed evidence of psychiatric harm somehow tipped the jury in favor of a conviction. There is nothing in the record to suggest that the challenged "suicidal ideation" testimony influenced the jury's ability to judge the evidence fairly in reaching a verdict on the charges against the petitioner. *Greer v. Miller*, 483 U.S. 756, 766 (1987) ("The sequence of events in this case—a single question, an immediate objection, and two curative instructions—clearly indicates that the prosecutor's improper question did not violate Miller's due process rights.") (footnote omitted); *Young*, 470 U.S. at 12 (holding that the court must view prosecutorial misconduct in context and evaluate the probable effect of the conduct on the jury's ability to judge the evidence fairly).

With regard to the reference to suicide made during the prosecutor's closing argument, the Appellate Court observed that the prosecutor was merely re-iterating the testimony of the victim, which, as noted, came in without objection. *See Enrique F.*, 146 Conn. App. at 833; 79 A.3d at 149; *see* Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-7, Trial Tr., 128-56, Oct. 12, 2011. The Appellate Court determined that the prosecutor did not improperly appeal to the jury's prejudices or passions during her closing argument, but instead properly based her argument "on the facts in evidence." *Enrique F.*, 146 Conn. App. at 833; 79 A.3d at 149. Furthermore, in the final instructions, the trial judge explicitly reminded the jurors that they should draw their own conclusions from the facts as they remembered them and should not consider statements made by

counsel in closing arguments as evidence. *See* Resp'ts' Mem. Opp'n, App. F, Doc. No. 12-12, Trial Tr., 111-12, Oct. 19, 2011.

Because the prosecutor did not mischaracterize the victim's testimony about her thoughts of suicide in closing argument, the comment was not prejudicial and thus did not deprive the petitioner of a fair trial. The Appellate Court reasonably applied Supreme Court law in reaching its conclusion that the prosecutor's statement linking the victim's thoughts of suicide to the alleged sexual abuse by the petitioner was not improper because it was based on direct testimony from the victim. *See Darden*, 477 U.S. at 169 (prosecution's comments during summation, although undesirable, did not deny petitioner of fundamentally fair trial because the prosecution did not manipulate or misstate the evidence or implicate other specific rights of the accused). Further, as discussed above, the reference to suicidal ideation did not—in light of other expressly admitted and unchallenged evidence of psychiatric harm to the victim—introduce facts that were so inflammatory as to deprive the defendant of a fair trial. The amended petition for writ of habeas corpus is denied on the ground that the prosecutor engaged in misconduct that deprived the petitioner of a fair trial.

## V.   Conclusion

The Amended Petition for Writ of Habeas Corpus [**Doc. No. 7**] is **DENIED**. The Clerk is directed to enter judgment in favor of the respondent and close this case.

The court concludes that petitioner has not made a substantial showing that he was denied

14

a constitutionally or federally protected right.  Thus, a certificate of appealability will not issue.

SO ORDERED at Hartford, Connecticut this 6th day of September, 2016.

/s/
MICHAEL P. SHEA
UNITED STATES DISTRICT JUDGE